[No. 17149.  *En Banc.*  June 25, 1923.]

ALFRED STRANDBERG, *Appellant*, v. JOHN STRINGER, *as
Sheriff of King County, et al., Respondents.*[1]

CHATTEL MORTGAGES (64-1)—FORECLOSURE—SERVICE OF NOTICE—
RETURN OF SHERIFF—STATUTES.  Under Rem. Comp. Stat., §§ 1104-
1110, providing for the foreclosure of chattel mortgages by sheriff's
notice and sale on personal notice if the mortgagor can be found,
which do not require any return or certificate of "not found," or
name anybody or place to whom such a return can be made, such a
certificate or return is not essential to the validity of a sale on
seizure and notice by advertisement, as provided by the act, where
it was admitted that the mortgagor was out of the state and could
not be personally served.

CHATTEL MORTGAGES (64-1)—CONSTITUTIONAL LAW (137)—FORE-
CLOSURE—DUE PROCESS OF LAW—PROCESS OR NOTICE.  Rem. Comp.
Stat., §§ 1104-1110, authorizing the foreclosure of a chattel mortgage
by sheriff's sale in like manner as sales upon execution, constitutes
due process of law, where it requires seizure of the property and
personal notice, or notice by advertisement if the mortgagor cannot
be found in the county, and provides a method by which the fore-
closure may be removed to and contested in the superior court.

HOLCOMB, J., dissents.

Appeal from a judgment of the superior court for
King county, Gilliam, J., entered September 14, 1921,
in favor of the defendants, notwithstanding the verdict
of a jury rendered in favor of the plaintiff, in an action
for conversion.  Affirmed.

*Lundin & Barto*, for appellant.

*Wright, Kelleher, Allen & Hilen*, for respondents.

FULLERTON, J.—On February 11, 1920, the appellant,
Strandberg, being then indebted to the Mount Vernon
National Bank in the sum of $1,600, represented by
two promissory notes, executed and delivered to the
bank a chattel mortgage upon a certain lot of potatoes

[1]Reported in 216 Pac. 25.

then in dry storage at the Bell Street Dock, in Seattle, King county, Washington. The mortgagor duly filed the mortgage for record with the county auditor of King county on February 13, 1920. Some few days after the execution of the mortgage, the mortgagor left the state of Washington for the territory of Alaska, and did not return to the state until May 14, 1920. In the meantime the mortgage debt matured, and the mortgagee, on April 16, 1920, began foreclosure proceedings under the mortgage foreclosure statute by the procedure therein defined as notice and sale. The notice was placed in the hands of the respondent Stringer, who was then sheriff of King county, who executed it by serving a copy of the notice on the person with whom they were in storage, and advertising and selling the property as like property is sold under execution.

The appellant, sometime after his return to the state, began the present action against the sheriff and his official bondsman to recover the value of the potatoes, charging the sheriff with a conversion. After issue joined, a trial was had before a jury, who returned a verdict in favor of the appellant for $2,400, the difference, evidently, between what the jury conceived to be the value of the potatoes and the mortgage and storage liens thereon. After the return of the verdict, the sheriff and his bondsman moved for judgment notwithstanding the verdict. This motion the trial court granted, entering a judgment of dismissal and for costs against the appellant. The appeal is from this judgment.

The appellant sought recovery on the theory that the sheriff had improperly executed the notice and sale. It is conceded that the mortgagor was not in the county of King and was not a resident thereof at the time the

foreclosure proceedings were had, and that no personal service could be had upon him in King county. But it is contended that the sheriff should have made a return of ''not found'', or made some form of certificate showing that personal service on the mortgagor could not be had before proceeding with the sale, and that his failure so to do renders the proceedings void.

The statute relating to the foreclosure of mortgages upon personal property is found at §§ 1104-1110, Rem. Comp. Stat. [P. C. §§ 9751-9757], and reads as follows:

''§ 1104. Any mortgage of personal property, when the debt to secure which the mortgage was given is due may be foreclosed by notice and sale as herein provided; or it may be foreclosed by action in the superior court having jurisdiction in the county in which the property is situated.

''§ 1105. The notice must contain a full description of the property mortgaged, together with time and place of sale, also a statement of the amount due, and must be signed by the mortgagee or his attorney.

''§ 1106. Such notice shall be placed in the hands of the sheriff or other proper officer, and shall be personally served in the same manner as is provided by law for the service of a summons: *Provided,* That if the mortgagor cannot be found in the county where the mortgage is being foreclosed, it shall not be necessary to advertise the notice or affidavit in a newspaper; but the general publication directed in the next section shall be sufficient service upon all the parties interested, and such notice shall be sufficient authority for the officer to take such property into his immediate possession.

''§ 1107. After notice has been served upon the mortgagor, it must be published in the same manner and for the same length of time as required in cases of the sale of like property on execution, and the sale shall be conducted in the same manner.

"§ 1108. The purchaser shall take all interest which the mortgagor had in the said mortgaged property upon which the said mortgage operated.

"§ 1109. The officer conducting the sale shall execute to the purchaser a bill of sale of the property, which bill of sale shall be effectual to carry the whole title and interest purchased, and if any balance of the purchase price remain, it shall be disposed of in the same manner as surplus proceeds of sales are on execution.

"§ 1110. The right of the mortgagee to foreclose, as well as the amount claimed to be due, may be contested by any person interested in so doing, and the proceedings may be transferred to the superior court, for which purpose an injunction may issue if necessary."

It will be observed, from a reading of the statute, that no provision is made therein for a return or certificate of "not found". There is no person, body or place named therein to whom such a return can be made, or with whom such a return can be filed. A return, in legal parlance, is a statement in writing, made by a ministerial officer, of the manner in which he has executed a process placed in his hands for execution. It is necessary in any instance, and is evidence of the officer's acts, simply because the law makes it so. If the law does not require such a return, none need be made, even on the execution of writs of court. Nor is an unauthorized return evidence of the facts recited therein; it is nothing more than the private memoranda of the person making it, and can be used as evidence only as other private memoranda can be used. The acts of the sheriff in executing a writ, when called in question, must be proved as any other disputed matter of fact is proved.

In Crocker on Sheriffs, § 47 (3d ed.), it is said:

"But if the process be not *returnable* process, that is where the officer is neither required nor authorized

to make return of his doings thereunder; no return to any such process will be received, either for the officer or for or against any party to the process. And so where the process is returnable process, if the officer make return of the performance of acts beyond his duty under such process, such return will be invalid as to such parts, and will not be evidence; though the addition of such parts will not render the whole return void, but it will be good to the extent he was authorized to make return. Though such return will be invalid as to others, it may be used as an admission as against the sheriff in a proper case. Thus, the sheriff cannot make his return evidence that he has paid money, levied under an execution, to the plaintiff, yet such return may be used against him in an action for not paying over the money. Nor can the officer's return be evidence of any fact which would go to excuse him for not having performed his duty, except as has been seen, such facts be official acts done in the ordinary and usual course of proceedings under such process. Thus a return to an execution that goods levied on had been casually destroyed by fire after the levy, will not be competent evidence for the sheriff in an action against him for not collecting the moneys on such execution. When such fact is a good defence, as it will be, where the sheriff has taken the property into his possession, and it is destroyed by fire, or is otherwise lost, without fault on his part, it must be proved in the usual mode. And so a return of *rescue,* in the cases where such fact will not excuse the officer, as where the prisoner was under arrest on final process, or was rescued or escaped after being committed to jail, not in consequence of a fire, the act of God, or of the public enemies, it will not be evidence for the officer. And so of a return of sickness, as an excuse for not discharging his duty; or that he had lost the process, or the like, and therefore could not return it. These facts cannot be evidenced by the return, for there is no law authorizing such return. They likewise must be proved in the ordinary way. And so an officer's return will not be evidence of any act done by him without his county

except in the cases where he is authorized to act without his county.''

To the same effect is our case of *Seattle v. Doran,* 5 Wash. 482, 32 Pac. 105, 1002. In that case the trial court refused to permit testimony to show the publication of a notice in an assessment proceeding, on the ground that it could not be shown by extrinsic evidence but must appear in the proceedings themselves. Answering the objection, it was said:

''There is nothing in the charter, or in any of the ordinances of said city to which our attention has been called, which requires the proof of the publication of such notice to be preserved by the city clerk in any particular way, or at all for that matter, though doubtless the city records should show in some way that such notice was published, and a regular way would be by an affidavit of the publisher, and such affidavit thus appearing would be held to be *prima facie* proof of the publication; but in the absence of any such requirement, competent proof tending to establish the publication of the notice would be permissible.''

In *Fouts v. New Whatcom,* 14 Wash. 49, 44 Pac. 111, the question was the validity of an order of the county commissioners vacating a street. The court said:

''Appellants contend that the proceedings to vacate said street were invalid on the ground that it does not appear from the records that notice was given of the making of said application as required by law, and that the court erred in admitting parol proof to establish the fact that such notice was given, and also of the petition. We do not think this position is well taken. The proof offered in no sense contradicted the records, for the records were silent as to the giving of the notice. It showed the filing of the petition, and the fact that one Utter appeared, and contested the granting of the same, and that an adjournment was taken to a subsequent term, when it was taken up for consideration and granted. The proof of the petition was

immaterial as the record showed what it was for. Regularly, proof of the giving of the required notice should have been preserved at the time and made a matter of record, but the statute does not in terms require it to be done, and any competent proof was admissible.''

In *State ex rel. Schexnayder v. Gordy*, 28 La. Ann. 589, the court stated the facts and rule as follows:

''This is a proceeding by mandamus to compel the sheriff of St. Mary to deliver to the relator fourteen hogsheads of sugar, sequestered in the suit of L. Schexnayder vs. J. T. Dumesnil, upon relator's furnishing a release bond for one thousand dollars as ordered by the judge *a quo*. The answer of the sheriff is, that within ten days of the seizure, the defendant in the sequestration presented an order of the judge and a bond, with good security, given in conformity therewith, and he, the sheriff, accepted the said bond, released the property to the said defendant, and returned the said bond into court as required by law.

''The relator took a bill of exceptions to the ruling of the judge admitting parol proof that the bond taken by the sheriff was taken to the clerk's office and delivered to the clerk to be filed, on the ground that the said clerk had issued a certificate to the relator to the effect that no such bond had been so furnished or filed within the ten days, and such certificate could not be disproved by parol evidence.

''The judge did not err. This is not such an official act as comes within the rule invoked by relator. We are referred to no law which makes it the duty of the clerk to issue such a certificate as an authentic instrument. It is nothing more than a written statement by any other individual.

''The evidence shows that the defendant furnished a release bond as ordered, and delivered it to the deputy clerk within ten days after seizure. This was sufficient, and the judgment in favor of the sheriff is correct.''

See, also: *Marsh v. Bancroft*, 1 Metc. (Mass.) 497.

We cannot, therefore, agree with the appellant in his contention that the sheriff, in executing the process of notice and sale, did not follow the statutory proceeding. On the contrary, we think he complied strictly therewith. The mortgagor could not be found in the county of King and was not a resident thereof, and hence no personal service could be made upon him in the manner in which personal service of a summons is required to be made. The sheriff thereupon served a copy of the notice and sale upon the person whom he found in possession of the property, seized the property, and advertised and sold it in the manner like property is required to be advertised and sold under execution. The statute required no more than this, and under its express terms, the purchaser at the sale took all the interest which the mortgagor had in the mortgaged property.

The appellant cites and relies upon the case of *White v. Powers*, 89 Wash. 502, 154 Pac. 820. That case does decide that it is necessary for the sheriff, when the mortgagor cannot be found in the county where the foreclosure proceedings are had, to make some form of return or certificate showing the fact, before he can lawfully proceed with the sale; and seemingly further holds that, unless the statute be construed as to require such a return, it would be obnoxious to the due process of law clauses found in the state and Federal constitutions. But we are now convinced that our holdings in this respect were not in accord with the statute. Since the statute makes no provision for such a return, and does not point out any person to whom the return shall be made, or point out any place where it shall be filed if made, the act would be an idle ceremony, adding nothing to the quantum of notice that the mortgagor would receive. In so far, therefore, as the case is con-

trary to the rule we here announce, it will not be followed.

The appellant makes the further contention that the statute, however it may be construed, is a violation of the rule of due process of law. The argument is that it permits a taking by one person of the property of another without notice, and without an opportunity on the part of the owner to defend against the claim for which the property is taken. But these objections are not well taken. There is not an absolute want of notice. The owner of the property has the same notice that any owner of property has whose property is taken and sold under execution, and no modern case holds, at least in so far as we are advised, that a seizure of personal property under a writ of execution, and its sale after advertisement by the posting of notices, is a taking of the property of one person by another without due notice. On the contrary, it is generally held that the seizure of the property is in itself sufficient notice to comply with the requirement of due process of law. *High v. Bank of Commerce,* 95 Cal. 386, 30 Pac. 556; *Coffee v. Haynes,* 124 Cal. 561, 57 Pac. 482; *Kwilecki v. Holman,* 258 Mo. 624, 167 S. W. 989.

Nor is the mortgagor denied the right to defend against the claim of the mortgagee. Mortgaged property can be sold under the process of notice and sale only in the case the mortgagor so wills it. By the express terms of the statute, he may remove the proceedings into the superior court, where he can make any defense to the right to foreclose the mortgage he could make were the proceedings originally instituted in that court. Our language in *Mack v. Doak,* 50 Wash. 119, 96 Pac. 825, is here pertinent. In that case we said:

"The foreclosure here involved was commenced and conducted by notice and sale in exact compliance with the requirements of Bal. Code, §§ 5870-5875 (P. C. §§ 6535-6540). Section 5870 provides that foreclosure may be made by notice and sale; § 5871 directs what the contents of the notice shall be, and § 5872 expressly provides that such notice shall be sufficient authority for the sheriff to take the property into his immediate possession. This provision makes the notice process sufficient to authorize the sheriff to seize the property without the consent of the mortgagor, and against his protest. Any other construction would render the statute ineffective. Section 5876, *supra,* provides a method by which the mortgagor may protect himself against an unauthorized foreclosure, or contest the amount claimed to be due. The appellants did not see fit to avail themselves of the provisions of this section, but permitted the foreclosure and sale to proceed without further protest or action upon their part, and thereafter commences this action for damages. Under these circumstances, the sheriff was fully protected in all of his proceedings by the notice which had been delivered to him, and the appellants are not entitled to recover."

See, also: *Allen v. Morris,* 87 Wash. 268, 151 Pac. 827.

But we think we need not further pursue the inquiry. There was no error in the ruling of the court sustaining the motion for judgment notwithstanding the verdict, and its judgment will stand affirmed.

MAIN, C. J., MACKINTOSH, BRIDGES, MITCHELL, and PARKER, JJ., concur.

HOLCOMB, J., dissents.